

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | |
|---|---|
| SHONTERA BOYD, § | |
| Plaintiff, § | |
| § | |
| vs. § | CIVIL ACTION NO. 3:20-4385-MGL |
| § | |
| NEPHRON PHARMACEUTICALS § | |
| CORPORATION, § | |
| Defendant. § | |

**ORDER ADOPTING THE REPORT AND RECOMMENDATION
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S FEDERAL CLAIMS**

Plaintiff Shontera Boyd (Boyd) filed this lawsuit in the Lexington County Court of Common Pleas against her former employer, Defendant Nephron Pharmaceuticals Corporation (Nephron). Boyd alleges claims under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e et seq.; 42 U.S.C. § 1981; the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 et seq.; and the South Carolina Payment of Wages Act (SCPWA), S.C. Code Ann. §§ 41-10-10 et seq.

Nephron subsequently removed the case to this Court and filed a motion for summary judgment. The Court has federal question jurisdiction over Boyd's federal Title VII, Section 1981, and ADA claims in accordance with 28 U.S.C. § 1331, and supplemental jurisdiction over her SCPWA state claim under 28 U.S.C. § 1367.

The matter is before the Court for consideration of the Magistrate Judge's Report and Recommendation (Report) suggesting Boyd's motion for partial summary judgment be denied and

Nephron's motion for summary judgment be granted.. The Magistrate Judge submits the Report in accordance with 28 U.S.C. § 636 and Local Civil Rule 73.02 for the District of South Carolina.

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The Court is charged with making a de novo determination of those portions of the Report to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Magistrate Judge filed the Report on May 19, 2022, and Boyd filed her objections on June 9, 2022.

Boyd lodges seven objections to the Magistrate Judge's Report. First, she complains that the Magistrate Judge erred in disregarding issues of fact underlying the reason Nephron gave for firing Boyd.

The Magistrate Judge recounts Boyd's termination, and the facts leading up to it as follows:

> [On October 16, 2019,] [w]hile waiting in the main office suite, Boyd could overhear a meeting between several managers, including Megan Hunter [(Hunter) [the Senior Manager of Quality]. Boyd overheard Hunter say, "I just sent [Boyd's] ass down to [A]ccraply!" Another manager told Hunter that Boyd was right outside of the room, to which Hunter replied, "Okay." Boyd entered the room and confronted Hunter, who remained seated. Boyd yelled at Hunter and used profanity, repeatedly asking Hunter "what was her problem with me" and "where's the professionalism?" Boyd hit a file cabinet in frustration, causing the cabinet to shake back and forth. At one point a manager stepped in between Hunter and Boyd, though Hunter remained seated. During the incident [Kathleen Griffin, (Griffin) Nephron's Vice President of Human Resources] walked into the room and observed Boyd's behavior. Griffin testified that she felt nervous about the level of Boyd's anger, profanity, and emotion and believed

> that Boyd was a threat to her and other employees. One of the managers called security and Boyd was escorted to Griffin's office. Griffin immediately suspended Boyd.
>
> Griffin recommended to CEO Lou Kennedy and Executive Director of Human Resources Karen Wilson that Boyd be terminated. Griffin based her recommendation on her own observation of Boyd's behavior toward Hunter. The following day, October 17, [2019,] Nephron terminated Boyd's employment based on the use of "profane and inappropriate language" and "disorderly conduct in a threatening and intimidating manner."

Report at 4-5.

According to Boyd, however, several witnesses's "description of [her] conduct pales in comparison to the severity described by Griffin; yet they witnessed more of the incident than Griffin [d]id." Boyd's Objections at 5.

But, these witnesses cast a shadow over her claim as to the degree of her misbehavior. For instance, one witness, Emily Duncan states that she "didn't think [Boyd] should have taken things to the level they got to[.]" Emily Duncan's Statement.

Another witness, Erica Callum, said that Boyd's "screaming continued to happen along with banging on the filing cabinet[.]" Erica Callum's Statement. Further, Daralyn Sossamon stated that Boyd "began screaming that there was no respect and kept yelling at [Hunter.]" Daralyn Sossamon's Statement.

In addition, according to Kisha Wright, Boyd "proceeded to yell and curse lots of profane words to [Hunter]. [Hunter] never said anything out of the way back to [Boyd]. [Griffin] . . . called security and I stepped out of the office. . . . The door was shut behind me, and I could still hear [Boyd] screaming and beating on the file cabinet in the office. [Boyd] was uncontrollable [and] was escorted out of the office and building at that time." Kisha Wright's Statement.

And, even Boyd admits that she "raised her voice and may have slammed her hand into file cabinet[.]" Boyd's Objections at 2.

That said, as the Magistrate Judge explained, even if there is contrary evidences as to the severity of Boyd's misbehavior, which there arguably is not, "Boyd fails to point to any evidence that the decision-makers, namely Griffin, did not actually believe the reasons they gave for terminating Boyd, or that the decision[,] was actually motivated by race." Report at 10.  Accordingly, the Court will overrule Boyd's first objection.

In Boyd's second objection, she contends the Magistrate Judge erred in disregarding evidence of differential discipline between she and Hunter to show racial bias.  Boyd is a black woman and Hunter is a white woman, who Boyd states is similarly situated to her.

A "variety of factors are considered when determining whether a comparator is similarly situated[.]" *Spencer v. Virginia State University*, 919 F.3d 199, 207 (4th Cir. 2019) (citation omitted) (internal quotation marks omitted).  Although "there is no bright-line rule for what makes two jobs 'similar' under Title VII, courts consider whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications—provided the employer considered these latter factors in making the personnel decision." *Id*. (citation omitted) (internal quotation marks omitted).

A cursory review of the law above shows Boyd and Hunter are not similarly situated.  For instance, from the Court's review of the record, it concludes they did not have the same job description nor did they have the same supervisor.  Therefore, the Court will also overrule this objection.

Boyd's third, fourth and fifth objection essentially make the same argument: that the Magistrate Judge substituted her judgment for matters that ought to be instead decided by a jury.

In her third objection, she insists the Magistrate Judge mistakenly assumed the credibility of Griffin. In light of the other contested evidence, Griffin's credibility, according to Boyd, is a question for a jury to decide. Boyd's fourth objection is that the Magistrate Judge erred because, by improperly assuming Griffin's credibility, she wrongfully decided questions of motive and intent, which are also jury questions. And, her fifth objection is that, by assuming Griffin's credibility, she eliminated Boyd's ability to prove her case by circumstantial evidence.

"Once an employer has provided a non-discriminatory explanation for its decision, the plaintiff cannot seek to expose that rationale as pretextual by focusing on minor discrepancies that do not cast doubt on the explanation's validity, or by raising points that are wholly irrelevant to it." *Hux v. City of Newport News, Va.*, 451 F.3d 311, 315 (4th Cir. 2006). "The former would not create a 'genuine' dispute, [and] the latter would fail to be 'material[.]'" *Id*.

As the Magistrate Judge stated, "Boyd fails to forecast evidence that Griffin did not actually believe that Boyd's behavior was profane, threatening, and intimidating, or that her decision was motivated by race." Report at 13. And, although Boyd takes issue with this statement in her objections, she still proffers no evidence of discrimination or retaliation. As such, she is unable to prove either of these claims. To put it another way, given the evidence in this case, the Court is unable to say a reasonable jury would be able to find any discrimination or retaliation in Nephron's decision to terminate Boyd's employment. Thus, the Court will overrule these objections, as well.

Boyd's sixth and seventh objection are also related. In her sixth objection, she states the Magistrate Judge erred by accepting Nephron's characterization of her SCPWA claim as a notice-only claim and overlooked its failure to give proper notice resulted in a failure to pay all wages due to Boyd. And, in her seventh objection, she contends the Magistrate Judge erred in failing

to consider whether to recommend declining to exercise supplemental jurisdiction over Boyd's SCPWA claim.

The Court may decline to exercise supplemental jurisdiction over a plaintiff's state law claims if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367.  And, the Court has "wide discretion" to do so.  *Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 553 n.4 (4th Cir. 2006).

When determining whether to decline to exercise supplemental jurisdiction, the Court considers "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995).

Here, the Court is unable to fathom how its declining to exercise its supplemental jurisdiction over the remaining SCPWA state law claim would inconvenience or unfairly prejudice either of the parties.  Nor does it appear there are any underlying issues of federal policy or comity involved in Boyd's SCPWA claim.  Additionally, the principles of judicial economy and efficiency suggest this state claim, which was originally filed in state court, should be decided there.

Therefore, the Court will decline to exercise supplemental jurisdiction over Boyd's SCPWA state claim and remand it to the Lexington County Court of Common Pleas for adjudication there.

After a thorough review of the Report and the record in this case pursuant to the standard set forth above, the Court overrules objection numbers one through five, adopts the Report to the extent it does not contradict this Order, and incorporates it herein.  Accordingly, it is the judgment of this Court Boyd's motion for partial summary judgment is **DENIED** and Nephron's motion for summary judgment is **GRANTED** as to Boyd's federal claims, which are **DISMISSED WITH PREJUDICE**.

Further, Boyd's SCPWA state law claim is **REMANDED** to the Lexington County Court of Common Pleas for adjudication there.

**IT IS SO ORDERED**.

Signed this 27th day of June, 2022, in Columbia, South Carolina.

/s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE